**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MICHAEL POWELL**                                                                           **PLAINTIFF**

**v.**                                                                           **No. 3:19CV23-DAS**

**FRANK SHAW, ET AL.**                                                                           **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Michael Powell, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The plaintiff alleges that defendant Frank Shaw denied him adequate mental health care from July of 2016 to August of 2017. He further alleges that Dr. Kumar denied him adequate mental health care from September of 2014 to January of 2016. He also alleges that defendant Captain Michael Jones used excessive force against him on August 3, 2016. He alleges that defendants Lt. Thomas and Sgt. A Hart used excessive force against him on December 22, 2016. Finally, he alleges that defendant Michael Murphy placed him in unconstitutionally harsh general conditions of confinement for ten days in July of 2016 by taking away his sleeping mat. For the reasons set forth below, all of Mr. Powell's claims against defendants Shaw, Kumar, Jones, Thomas, Hart, and Murphy must be dismissed for failure to exhaust administrative remedies.

**Failure to Exhaust Administrative Remedies**

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process as to any of his claims before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq.* – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to be an effective tool to help weed out the frivolous claims from the colorable ones:

> Prisoner litigation continues to 'account for an outsized share of filings' in federal district courts. *Woodford v. Ngo*, 548 U.S. 81, 94, n. 4, 126 S.Ct. 2378 (2006) (slip op., at 12, n.4). In 2005, nearly 10 percent of all civil cases filed in federal courts nationwide were prisoner complaints challenging prison conditions or claiming civil rights violations. Most of these cases have no merit; many are frivolous. Our legal system, however, remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge lies in ensuring that the flood of non-meritorious claims does not submerge and effectively preclude consideration of the allegations with merit. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).
>
> Congress addressed that challenge in the PLRA. What this country needs, Congress decided, is fewer and better prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (PLRA intended to "reduce the quantity and improve the quality of prisoner suits"). To that end, Congress enacted a variety of reforms designed to filter out the bad claims and facilitate consideration of the good. Key among these was the requirement that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit.

*Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or

- 2 -

otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

- 3 -

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id.* The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24,

- 4 -

2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Howard, supra.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* Issuance of the Second Step Response is the only way to complete the grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id.*

In this case, Mr. Powell did not submit grievances regarding any of his claims against defendants Shaw, Kumar, Jones, Thomas, Hart, and Murphy.[1] As such, all of his claims against these defendants must be dismissed without prejudice for failure to exhaust administrative remedies.

**Conclusion**

---

[1] He mentioned difficulty obtaining psychiatric medication for a period of time in Grievance MCCF-18-316, but he made clear that the subject of the grievance was "the action on 8/4/18 of [ILAP Staff's] returning … 5 copies with all the dates edited 'manipulated' out of them." Doc. 54-2 at 19, 20.

For the reasons set forth above, Mr. Powell's claims against defendants Shaw, Kumar, Jones, Thomas, Hart, and Murphy will be dismissed without prejudice for failure to exhaust administrative remedies.[2] As Shaw and Kumar were the only defendants involved in the allegations regarding denial of adequate medical care, that claim must be dismissed. Similarly, as defendant Jones was the only one involved in the allegation of the August 3, 2016, excessive force incident, that claim will also be dismissed. Further, as defendants Thomas and Hart were the only ones involved in the allegation regarding the December 22, 2016, excessive force incident, that claim will be dismissed, as well. Finally, as defendant Murphy was the only one involved in the allegation regarding the July 2016 general conditions of confinement, that claim will likewise be dismissed. In sum, this case will be dismissed without prejudice for failure to exhaust administrative remedies. A judgment consistent with this memorandum opinion will issue today.

 **SO ORDERED**, this, the 23rd day of March, 2021.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE

---

[2] Defendants Thomas, Hart, and Murphy have not been served with process; however, as the plaintiff did not exhaust the grievance process against these defendants before filing suit, the court will dismiss them, as well. When a defending party establishes the plaintiff has no cause of action, any unserved officials are entitled to the benefit of the appearing defendant's favorable summary judgment motion. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).